## IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT
## OF COLORADO

Criminal Case No. 19-cr-00140-RBJ-02

UNITED STATES OF AMERICA

        Plaintiff,

v.

2. RYAN MEDHURST,

        Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by Jason R. Dunn, United States Attorney for the District of Colorado, through Assistant United States Attorney Gregory A. Holloway, and the defendant, Ryan Medhurst, personally and by counsel, Brian R. Leedy, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

## I. AGREEMENT

The defendant agrees to plead guilty to the Count 1 of the Information, charging the following violation: False Entry, Failure to Make Appropriate Entry, or Failure to Properly Maintain Records by a Licensed Dealer in violation of Title 18 U.S.C. Section 922(m). The defendant also agrees to waive certain appellate rights, as explained in greater detail below. The defendant also agrees to recommend the imposition of a sentence of five years' probation with conditions including that the defendant not possess any firearm. The defendant further permanently agrees to relinquish and not seek to reinstate any and all licenses as a federal firearms dealer.

COURT EXHIBIT 1

The defendant further agrees to relinquish to the United States all claim, title and interest the defendant has in the following firearms seized from his residence which belonged to co-conspirator Matthew Marre: (1) Sig Sauer P-226 9 mm pistol S/N: 66-786504; (2) Sig Sauer P-239 9 mm pistol S/N: SA-35986 with magazine containing nine (9) rounds; (3) Heckler and Koch USP 40 .40 caliber pistol S/N: 22091411; (4) Ruger 22/45 Mark 3 .22 caliber pistol S/N: 22850193; (5) Rebel .260 Rem rifle with US Optics scope S/N: D0215; (6) Ruger 10/22 .22 caliber rifle S/N: 35185510; (7) Savage Model 12 .22-.250 Rem with Vortex Scope S/N: H202949; (8) JC Higgins Model 36 .22 caliber rifle with scope S/N: 2552429; (9) POF USA Model P415 .223 caliber rifle with Vortex scope and suppressor S/N: 0904288; (10) Russian rifle .762 caliber B155497/ S/N: 10237; (11) Remington 870 12 gauge shotgun S/N: RS82252B; (12) Remington 878 12 gauge shotgun S/N: 47626L; (13) Remington 597 .22 caliber rifle S/N: B2679831; and (14) Remington 7615 .223 caliber pump action rifle S/N: B8533290.

In exchange for the defendant's plea of guilty and waiver of certain appellate rights, the United States agrees to: (1) recommend the Court give the defendant full credit for acceptance of responsibility per United States Sentencing Guidelines (USSG) § 3E1.1, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under §§ 3C1.1 and 3E1.1, comment (note 4) between the time of the guilty plea and sentencing; (2) recommend a probationary sentence of five years with no term of imprisonment; (3) agree not to charge the defendant with any additional violations based on facts and evidence currently known to the U.S. Attorney's Office for the District of Colorado, specifically prosecution of the defendant for additional violations of Title 18, United States Code, Sections 1039 and 2, Fraud in Connection with

Obtaining Confidential Phone Records and Aiding and Abetting the Same; and, Title 18, United States Code, Sections 922(g)(1) and 2, Possession of a Firearm by a Prohibited Person and Aiding and Abetting the Same; and (4) agree to dismiss the Superseding Indictment as it relates to Defendant Medhurst at the time of sentencing.

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 10; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct. Should the plea of guilty be vacated on the motion of the

defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement.

## II. **ELEMENTS OF THE OFFENSE**

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

For Count 1, False Entry, Failure to Make Appropriate Entry, or Failure to Properly Maintain Records by a Licensed Dealer:

*First*, the defendant was a licensed firearms dealer; and

*Second*, the defendant did knowingly make a false entry in, or did knowingly fail to make appropriate entry in, or did knowingly fail to properly maintain, any record which he was required to keep.

## III. **STATUTORY PENALTIES**

The statutory penalty for Count 1 is not more than 12 months' imprisonment, not more than 5 years' probation, not more than a $100,000 fine, or both; not more than 1 year supervised release; and, a $25 special assessment fee. 18 U.S.C. §§ 3559(a)(6); 3561(c)(2).

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV. **COLLATERAL CONSEQUENCES**

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. If the defendant is

an alien, the conviction may cause the defendant to be deported and removed from the United States or confined indefinitely if there is no country to which the defendant may be deported, to be denied admission to the United States in the future, and to be denied citizenship.

## V. <u>**STIPULATION OF FACTS**</u>

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision. The parties agree that the date on which relevant conduct began January of 2018, with dates being approximate and inclusive.

The parties further agree as follows:

On November 26, 2018 the FBI Rocky Mountain Safe Streets Task Force (RMSSTF) was contacted about possible fraud in connection with emergency requests made to cell phone carriers for location assistance. Each of the four carriers -- Sprint

Corporation, Verizon Wireless, T-Mobile USA, and ATT Wireless -- have 24 hour Law

Enforcement assistance operators that are available to assist in emergencies across the

United States to aid any law enforcement agency that is involved in an emergency that

potentially involves death or serious bodily injury.

Information is provided by these cell phone companies with legal court process

compelling the companies to assist law enforcement; or, in an emergency, without legal

process if the situation potentially involves death or serious bodily injury that could occur

without immediate action.

Verizon Wireless advised that since June of 2018 until November 2018, five

emergency requests for cell phone data were made on the Verizon Law Enforcement

Help Center by a male who identified himself as Matthew Marre, claiming to be an

investigator for the "Colorado Department of Public Safety" and the "Colorado Task

Force." During all five calls Verizon believed Marre was acting in the capacity of a law

enforcement officer requesting immediate release of cell phone information from

Verizon Wireless under federal laws 18 U.S.C. § 2702(b) and/or 18 U.S.C. §2702(c)(4)

authorizing emergency disclosure. Each time Marre claimed an emergency that

potentially involved the danger of death or serious physical harm. Verizon released the

requested cell phone records to include GPS location to Matthew Marre.

On the fifth call in November of 2018, Verizon employees became suspicious

that Marre may not be a law enforcement officer. When Verizon employees called

Marre back to verify he was with a law enforcement agency, they found that the number

provided by Marre did not belong to a legal law enforcement agency. Verizon notified

the FBI that confidential phone records information to include GPS data was released to

a Marre after Marre fraudulently claimed to be a law enforcement officer.

Investigators researched the phone numbers used by Marre for these requests,

which were 720-354-0721 and 970-408-0773. Publicly available information verified

these numbers were used by Matthew Marre. Multiple public sources, as well as law

enforcement data bases, show Matthew Marre is working as a contractor for at least

three Bail Bonds companies to locate and detain persons who have court bonds posted

throughout various courts in the state of Colorado. The common or "street" term for this

job action is often called a "bail bondsman", "bounty hunter" and "fugitive recovery

agent", all who are private citizens with no law enforcement power under state or federal

law. Further, Marre was previously convicted of a felony and was thus ineligible for

employment as a law enforcement officer. Investigation revealed that Marre was

fraudulently obtaining the confidential phone records information, specifically GPS

location data, in order to gain commercial advantage and economic gain in his work as

a bounty hunter.

Believing Marre might have been in contact with the other three main national

cell phone companies, investigators contacted AT&T, T-Mobile and Sprint Wireless

law enforcement assistance departments to see if Marre fraudulently obtained

confidential phone records information from them as well. Investigation showed that

he had done so.

As part of their investigation, agents learned that on May 31, 2018, Marre called

the AT&T law enforcement line claiming that he had an exigent circumstance (suicidal

subject) for the phone number 432-741-1771. Marre called AT&T three separate times.

When AT&T tried to confirm the "Colorado Public Safety Task Force" they were unsuccessful. Each time AT&T employees questioned Marre, he came up with various excuses. One was that his supervisor was in a meeting. Another was that the "task force" was made up of multiple agencies so they would not have a set office with dispatch. Eventually, Marre claimed his supervisor was "Ryan Smith." When AT&T called Marre's land line, Marre had arranged to have the call forwarded to Ryan Medhurst's cell phone.

Mr. Medhurst answered the call from AT&T stating "task force", and asked when asked about the open incident number AT&T received from Marre he asked "is this regarding one of my agents making request?". He further stated his name was "Ryan Smith", and when asked for his badge number he stated that he was "not a sworn officer but an intelligence analyst with the agency".  He further stated that that one  of his "agents" called and said AT&T needed to talk his supervisor and that "Matthew Marre" was "one of his agents". When asked he stated the agency was "Colorado Public Safety" and provided an email address of "ryan.smith@cotf.us".

AT&T recorded these calls. Wayne Tyner confirmed the person on the phone claiming to be Ryan Smith was Ryan Medhurst.

Further, analysis of call logs from Marre's phone show him call Medhurst 20 times on May 31, 2018. Marre's phone records also show the three recorded calls to AT&T. There are calls to Medhurst listed both immediately before and immediately after the AT&T calls in with both Marre and Medhurst.

Through the investigation, agents also learned that the defendant was a licensed firearm dealer. As a licensed firearm dealer, the defendant was required to maintain written records about various firearms he sold and maintained possession of, including

9

specialized components such as silencers. Agents discovered that Marre made an arrangement with the defendant to possess and access a number of firearms even though he was a convicted felon. This arrangement, described in statements by both the defendant and Marre as a "trust agreement," was not written or properly recorded in any records from January of 2018 through June of 2019. The defendant and Marre used this agreement as a mechanism to circumvent the fact that Marre was legally prohibited from possessing firearms because he was a convicted felon. The defendant did knowingly fail to make appropriate entry in, or did knowingly fail to properly maintain, any record of this arrangement with Marre. The defendant would have been required to accurately maintain a record of this as a licensed dealer.

Between November 12 and 17, 2018, the defendant also assisted Marre in the purchase of a handgun which Marre eventually gave to Wayne Tyner as a gift. On November 17, 2018, the defendant did knowingly make a false entry in, fail to make appropriate entry in, or did knowingly fail to properly maintain, the record of this transaction as well which was required of him as a licensed dealer by not indicating the true purchaser of this specific handgun.

## VI.   ADVISORY GUIDELINE COMPUTATION AND 18 U.S.C. ' 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing

range computed by the Court under advisory guidelines issued by the United States

Sentencing Commission. In order to aid the Court in this regard, the parties set forth

below their estimate of the advisory guideline range called for by the United States

Sentencing Guidelines. To the extent that the parties disagree about the guideline

computations, the recitation below identifies the matters which are in dispute.

A.      The base guideline is §2K2.1(a)(8), with a base offense level of **6**.

B.      Because the offense involved between 8 - 24 firearms, four levels are

added pursuant to §2K2.1(b)(1)(B).

C.      There are no victim-related, multiple count or obstruction adjustments.

D.      The adjusted offense level, therefore, would be **10**.

**E.**      Acceptance of Responsibility: The defendant should receive a **2-level**

**decrease** for acceptance of responsibility under §3E1.1, resulting in a total offense level

**8**.

F.      Criminal History Category: The parties understand that the defendant's

criminal history computation is tentative. The criminal history category is determined by

the Court based on the defendant's prior convictions. Based on information currently

available to the parties, it is estimated that the defendant's Criminal History Category

would be **I**.

G.      Assuming the criminal history facts known to the parties are correct, the

career offender/criminal livelihood/armed career criminal adjustments do not apply.

H.      Imprisonment: The advisory guideline range of imprisonment for all

counts resulting from an offense level of **8** and a Criminal History Category **I** is **0 – 6**

**months**. However, in order to be as accurate as possible, with the criminal history

11

category undetermined at this time, the estimated offense level could conceivably result in a range from 0 months (bottom of Category I) to 12 months (the statutory maximum). The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

The maximum term of probation is up to 5 years pursuant to 18 U.S.C. §3561(c)(2).

I.      Fine: Pursuant to guideline §5E1.2, assuming the estimated offense level of **8**, the fine range for this offense would be **$2,000 to $20,000** (the statutory maximum), plus applicable interest and penalties.

J.      Supervised Release: Pursuant to guideline §5D1.2, if the Court imposes a term of supervised release, that term is **no more than 1 year**.

K.      Restitution: Restitution does not apply.

The parties understand that, although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary

entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. <u>ENTIRE AGREEMENT</u>

The agreement disclosed to the Court is the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 5/7/2020

*Ryan Medhurst*

Ryan Medhurst
Defendant

Date: 5/7/2020

*Brian Leedy*          s/ Brian R. Leedy

Brian R. Leedy
Attorney for Defendant

Date: 05/07/2020

*s/ Gregory A. Holloway*

Gregory A. Holloway, Assistant U.S. Attorney
Attorney for the Government