IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-00140-RBJ

UNITED STATES OF AMERICA

    Plaintiff,

v.

2.    RYAN MEDHURST,

    Defendant.
_____

**MOTION FOR EARLY TERMINATION OF PROBATION
AND REQUEST FOR HEARING**
_____

Mr. Medhurst, through counsel, and pursuant to 18 U.S.C. § 3564(c) and Federal Rule of Criminal Procedure 32.1(c)(1) respectfully requests that the Court terminate his probation early. Undersigned counsel has conferred with Mr. Medhurst's supervising probation officer who supports this request. Counsel has provided a copy of this motion to government counsel and requested their position. The government opposes this request. As grounds he states as follows:

    **I.**    **Early Termination of Probation: 18 U.S.C. § 3564(c) and Federal Rule of Criminal Procedure 32.1(c)(1).**

18 U.S.C. § 3564(c) provides that "[t]he court, after considering the factors set forth in section 3553(a) to the extent they are applicable, may, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, terminate a term of probation previously ordered and discharge the defendant at any time in the case of a misdemeanor."

Federal Rule of Criminal Procedure 32.1(c)(1) relates to the modification of probation and provides that the court must hold a hearing before modifying the conditions of probation unless "the person waives the hearing or the relief sought is favorable to the person and does not extend the term of probation, and the attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so."

## II.  Procedural History.

### A. Pretrial Supervision, Misdemeanor Plea and Sentence.

On May 11, 2020, Mr. Medhurst entered a plea of guilty to a one count information charging a violation of 18 U.S.C. § 922(m)(making a false entry, failing to make an appropriate entry and failing to properly maintain a record he was required to keep under his Federal Firearm License), a misdemeanor.

On the same day the Court proceeded to immediate sentencing. An immediate sentencing report was prepared which calculated Mr. Medhurst's advisory guideline range to be 0-6 months based on a total offense level of 8 and a criminal history category of I as Mr. Medhurst had no previous criminal history. Doc. 74. As of the date of sentencing Mr. Medhurst had been on pretrial supervision for 9 months through which he was compliant with the conditions of his bond. *Id.*

Mr. Medhurst was placed on probation for a period of 5 years on May 11, 2020 and has remained under supervision for over 18 months. Doc. 86. The Court imposed mandatory, standard and special conditions of probation. *Id.* On June 2, 2020, the Court granted Mr. Medhurst's "Unopposed Motion to Modify" the conditions of his supervision and removed the condition relating to drug testing. Doc. 88. For over 2

years Mr. Medhurst has remained compliant with the conditions of his pretrial supervision and probation.

### B.  Special Conditions of Supervision.

Special condition 2 required Mr. Medhurst to "relinquish and not seek reinstatement" of the Federal Firearm Licenses (FFL) he had at the time.  *Id.*  In May of 2020, Mr. Medhurst, through counsel, began the process of relinquishing his FFL.  As his FFL related documents, including his "bound book," remained in property, he requested that they be provided to the appropriate section of the ATF in order to begin the process.  On July 20, 2021, agents from the ATF FFL Compliance Division took possession of Mr. Medhurst's FFL Bound Book and related paperwork.  On August 9, 2021, the records associated with Mr. Medhurst's FFL were turned over to the Industry Operations side of the ATF, specifically Industry Operations Investigator Gregory Paa.  On September 27, 2021, undersigned counsel received confirmation from Mr. Paa that Mr. Medhurst's FFL was officially inactive.  **Attachment A** – ATF FFL "ezcheck" (https://fflezcheck.atf.gov/fflezcheck/) record, accessed December 2, 2021.

### C.  The Position of United States Probation.

On August 11, 2020, Mr. Medhurst was transferred to the "Low Risk Supervision" caseload of United States Probation.  **Attachment B** – August 11, 2020 Letter from United States Probation for the District of Colorado Re: Notice of Officer Change.

Undersigned counsel conferred with Mr. Medhurst's supervising probation officer, USPO Melissa Batalla, as to Mr. Medhurst's compliance with supervision and her position on this request for early termination.  Ms. Batalla provided the following in support of early termination:

> "Supervised release commenced on May 11, 2020. He has completed nearly 1 year and 7 months of his term. Mr. Medhurst has been highly compliant and successful on supervision, and was transferred to Low Risk Supervision on July 30, 2020. His supervision strengths include stable employment, great communication with myself and his previous officer, and stable housing. He does not face any current obstacles that may affect his future supervision success. His presentence report can be found in CMECF. Based on the details provided, I am in support of his early termination."  See, **Attachment C** – Correspondence with USPO Melissa Batalla.

### III.   Applicable 3553(a) Factors.

#### A. The Nature and Circumstances of the Offense and History and Characteristics of Mr. Medhurst.

1. Autism Spectrum Disorder (ASD), a History of Difficulties with Interpersonal Relationships, and Mr. Medhurst's Conduct.

Mr. Medhurst was diagnosed with ASD first in 1994, when he was 19 years of age, and more recently by Dr. Helena Huckabee.  Doc. 76, pg. 1.  Due to the disorder, he has a "long history of marked difficulties with learning and interpersonal relationships beginning around age 6".  *Id.*  Mr. Medhurst's "weaknesses in social reciprocity, social/emotional awareness and communication are consistent with a diagnosis of ASD - Severity Level 1".  *Id.*  Mr. Medhurst's offense is "readily attributable to impairments associated with his diagnosis of ASD . . . [as] he struggles significantly with social communication . . . [and faces] pervasive challenges reading social cues as well as low levels of social knowledge and experience make him highly vulnerable to malintent from others."  *Id.*

Due to "his poor insight into the perspectives and agendas of others, as well as concrete thinking so symptomatic of ASD, [he] is largely unable to imagine friends or acquaintances would engage in malicious behavior that he would not do himself."  *Id.*  Mr. Medhurst's "restricted interests . . . and tendency to form relationships based solely

4

on these interests, creates situations where he is vulnerable to being surrounded by people he believes are "friends" because they share object-oriented interests with him." Accordingly, "such connections are at high risk for not being based on something other than a reciprocal and caring relationship that characterizes true friendships." *Id.*

### 2. Mr. Medhurst's History of Service to the Community.

At the time of his sentencing Mr. Medhurst was a licensed Emergency Medical Technician.  See, Doc. 75, Attachment G.  Mr. Medhurst regularly volunteered with public safety agencies before his was sentenced, including the Public Safety Initiative at Colorado State University, the Larimer County Sheriff's office, the American Red Cross and the Longmont Emergency Unit where he was given the Volunteer of the year award in 2018.  *Id.*  Mr. Medhurst wishes to continue volunteering as an EMT but has been limited by his probationary station in the instant matter, and the collateral consequence that has resulted to his EMT certification.

In September of 2020, Mr. Medhurst was contacted by the Policy and EMTS Enforcement section of the Health Facilities & Emergency Medical Services Division of the Colorado Department of Public Health & Environment (CDPHE) regarding his EMT license.  In December of 2020, Mr. Medhurst entered into a "Stipulation for Probation of EMT Certification" (hereafter "Stipulation") with CDPHE based on the instant offense. The terms of his stipulation require that his EMT certification be placed on probationary status through December of 2023, subject to the following conditions:

"Inform any EMS Agency Director and Medical Director for which Mr. Medhurst works or volunteers of the existence of this Stipulation, and request that they contact the Department for verification;

Inform the Division of any change in work or volunteer status within 72 hours of the change;

5

> Inform the Division within 72 hours if Mr. Medhurst becomes aware that he is being investigated by any law enforcement agency for any criminal activity occurring after the effective date of this Stipulation;
>
> Inform the Division within 72 hours if Mr. Medhurst is charged with any felonies or misdemeanors occurring after the effective date of this Stipulation, excluding minor traffic infractions; and
>
> Inform the Division within 72 hours if Mr. Medhurst engages in any conduct that could give rise to disciplinary sanctions for good cause, as enumerated in 6 C.C.R. 1015-3." See, **Attachment D** – "Stipulation".

If Mr. Medhurst fails to comply with the conditions during the probationary period his license is subject to suspension and revocation. *Id.*

Condition 7 of the "Stipulation" directly addresses the sentence for the instant offense and states as follows:

> "In the event Mr. Medhurst's five (5) year probationary sentence for Case Number 1:19-cr-00140-RBJ-2 terminates early, the Department will consider a written request for an early termination of Medhurst's EMS certification probationary period."

Mr. Medhurst has sought to volunteer as an EMT with the Longmont Emergency Unit, however, he has been informed that he is unable to volunteer due to his active sentence of probation in the instant matter. **Attachment E** – Letter from Armando Trujillo of the Longmont Emergency Unit.

Additionally, Mr. Medhurst seeks to volunteer teaching firearm safety courses which is precluded based on standard condition 10 of his supervision. See, Doc. 86, pg. 3.

**B. Punishment, Deterrence and Protection of the Public.**

Mr. Medhurst has no other criminal history, and as a result of his offense, he has served 4 days of incarceration, complied with all conditions of pretrial release for 9 months, and has complied with all conditions of his probation for 18 months. Additionally, he has surrendered his FFL.  Mr. Medhurst has been punished for his conduct and has been effectively deterred from engaging in any similar conduct in the future.  Due to his lack of previous criminal history and the punishment and deterrence that he has experienced, he does not pose a risk to the public.

**IV.    Conclusion.**

Wherefore, through counsel, unopposed by United States Probation, and pursuant to 18 U.S.C. § 3564(c) and Federal Rule of Criminal Procedure 32.1(c)(1) respectfully requests that the Court terminate his probation early.

Respectfully submitted,

*s/ Brian R. Leedy*
Brian R. Leedy
Ridley McGreevy & Winocur P.C.
303 16th Street, Suite 200
Denver, CO 80202
Phone:  303-629-9700
Fax:  303-629-9702
leedy@ridleylaw.com
***Attorney for Ryan Medhurst***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing:

**MOTION FOR EARLY TERMINATION OF PROBATION
AND REQUEST FOR HEARING**

was electronically filed with the Clerk of the Court using the CM/ECF system on this 10th day of December, 2021 which will send notification of such filing to the parties and counsel in the case.

             *s/ Jennifer J. Feldman*
             Jennifer J. Feldman